<u>Filed Electronically</u>

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

| | |
|---|---|
| ANTHONY TODD ARNOTT, M.D., ) | |
| ) | CASE NO.: 0:15-cv-00032-DLB |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ASHLAND HOSPITAL CORPORATION ) | **MEMORANDUM IN SUPPORT** |
| D/B/A KING'S DAUGHTERS MEDICAL ) | **OF DEFENDANT'S MOTION TO** |
| CENTER, ) | **DISMISS, OR IN THE** |
| ) | **ALTERNATIVE, MOTION FOR** |
| Defendant. ) | **SUMMARY JUDGMENT** |
| ) | |

Defendant, Ashland Hospital Corporation d/b/a King's Daughters Medical Center ("KDMC"), through undersigned counsel, submits this Memorandum of Law in support of its Motion to Dismiss, or in the alternative, Motion for Summary Judgment.

## INTRODUCTION

This case arises from KDMC's rightful termination of Plaintiff, Anthony Todd Arnott, M.D.'s Employment Agreement. Plaintiff was employed as a family practice physician at KDMC's family care center in Olive Hill, Kentucky. On December 29, 2014, after learning that he was being investigated by the Office of the Inspector General, Plaintiff submitted a letter of resignation from his employment with KDMC, to become effective ninety days later. Soon thereafter, KDMC became aware of numerous issues relating to Plaintiff's prescribing practices and the potential safety of patients. On January 7, 2015, KDMC exercised its right under Plaintiff's Employment

{00519614-15 }

Agreement to terminate him immediately based on its good faith determination that his continued employment jeopardized the health, safety, and welfare of patients.

Plaintiff filed this action alleging violations of Kentucky's Wage and Hour Act, breach of contract, and breach of good faith and fair dealing. Plaintiff alleges that KDMC's immediate termination of his contract was ineffective and that he is entitled to compensation from the time he submitted his resignation notice until his resignation became effective, a ninety-day period from December 29, 2014 to March 30, 2015. Plaintiff also seeks statutory damages under the Wage and Hour Act.

Discovery has been completed. The undisputed facts demonstrate that Plaintiff cannot meet the jurisdictional minimum amount for this Court's subject matter jurisdiction. As a medical doctor, Plaintiff is exempt from the Wage and Hour Act and cannot pursue a claim for statutory damages. Plaintiff's historical earnings history also demonstrates that, even if Plaintiff were entitled to ninety days of compensation, the amount he could recover falls well short of the $75,000 that he must establish to maintain his claim before this Court.

Alternatively, even if Plaintiff could establish that the amount in controversy exceeds $75,000, Plaintiff's breach of contract claim must be dismissed as a matter of law. KDMC properly exercised its contractual right to immediately terminate Plaintiff's employment based on its concerns for patient safety. Plaintiff can offer no evidence to create a question of fact regarding KDMC's legal right to terminate his employment. Because there is no genuine issue of material fact, this matter is appropriate for summary judgment.

**FACTUAL BACKGROUND**

Plaintiff was employed as a family care physician at KDMC's family care clinic in Olive Hill, Kentucky. The terms and conditions of Plaintiff's employment were governed by a Physician Employment Agreement ("Employment Agreement") executed on October 7, 2014. See Employment Agreement, attached as **Exhibit A**. The termination provisions are set out in Section 19 of the Employment Agreement. KDMC had the right to terminate Plaintiff's employment immediately for various enumerated causes, including "upon the good faith determination of KDMC that continuing the employment of Physician jeopardizes the health, safety or welfare of any patient." See Employment Agreement, **Exhibit A**, p. 8, Section 19 (b)(xi).

Unbeknownst to KDMC, Plaintiff's medical practice was under investigation by the Office of Inspector General ("OIG") when the Employment Agreement was executed. See OIG Investigative Report (redacted), attached as **Exhibit B**. On October 22, 2014, the OIG referred its investigation to the Kentucky Board of Medical Licensure (the "Licensure Board"). On or about December 11, 2014, KDMC received notice that the Licensure Board was investigating Plaintiff's prescribing practices. See Affidavit of Sara Marks, attached as **Exhibit C**. Plaintiff was on vacation out of the country when KDMC received this notice. On December 29, 2014, after returning, Plaintiff submitted his ninety-day written notice of resignation. See Plaintiff's resignation letter, attached as **Exhibit D**.

On or about December 30, 2014, Plaintiff and his supervisor, Valerie Ingles, met with the Licensure Board to review fourteen medical files that the Board had subpoenaed. Before the meeting, Plaintiff was given an opportunity to review the files

and complete any necessary charting, but he elected not to do so. See Agreed Order, attached as **Exhibit E**, ¶¶ 5-6, and Plaintiff's dep., attached as **Exhibit F**, p. 27. Plaintiff did not provide any explanation for the medical decisions reflected in the fourteen charts selected for review. See Agreed Order, **Exhibit E**, ¶¶ 5-6.

After this meeting, Plaintiff's work habits and patient care became erratic. Plaintiff ceased prescribing all narcotic medications without consideration for each patient's medical history or diagnosis. See Marks Affidavit, **Exhibit C**, and Affidavit of Valerie Ingles, attached as **Exhibit G**. Rather than meeting with each patient to discuss a treatment plan, Plaintiff, against KDMC policy and without KDMC's knowledge, went to the clinic and sent letters to patients notifying them he was immediately terminating their medication regime. See Marks Affidavit, **Exhibit C**, and Ingles Affidavit, **Exhibit G**. Failure to taper prescribed narcotics can lead to physical problems.

Plaintiff also began prescribing medications that he was not authorized to prescribe, prescribing contraindicated medications, prescribing medications no longer manufactured, and prescribing medications without prior insurance approval. Plaintiff began to miss work and was not communicating with his patients. See Marks Affidavit, **Exhibit C**, and Ingles Affidavit, **Exhibit G**. Plaintiff was absent from work and did not return calls from his supervisor, Valerie Ingles, about a patient who was requesting information from Plaintiff. See Ingles Affidavit, **Exhibit G**. KDMC also learned that Plaintiff had over 2,000 open patient charts with documentation to be completed. See Ingles Affidavit, **Exhibit G**. Dr. Philip Fioret, Chief Medical Officer,

and Dr. Terrence Welsh attempted to contact Plaintiff to discuss his erratic behaviors, but Plaintiff did not return their calls.  See Ingles Affidavit, **Exhibit G**.

These behaviors raised concerns with Ms. Ingles and Ms. Marks about Plaintiff continuing to see patients. Ms. Marks made a good faith determination, with input from Ingles and from the Chief Medical Officer, Dr. Philip Fioret, that Plaintiff's continued employment presented a danger to the health and welfare of KDMC's patients. On January 7, 2015, Ms. Marks sent Plaintiff a letter terminating his employment immediately.  The termination letter detailed the concerns and reason for terminating Plaintiff's employment.  See Termination Letter, attached as **Exhibit H**. KDMC paid Plaintiff his accrued compensation through his date of termination, including his quarterly bonus, supervisory fees, and PTO time. There is no dispute that Plaintiff was fully paid all compensation earned through January 7, 2015, his termination date.  See KDMC's Payments to Plaintiff, attached as **Exhibit I**.

Ultimately, the Licensure Board found that Plaintiff "departed from or failed to conform to acceptable and prevailing medical practices."  See Agreed Order, **Exhibit E**, ¶7.  Plaintiff was placed on a five-year probationary period, required to complete educational courses, and agreed to reimburse the Licensure Board $6,887.50 for the cost of the investigation.  See Agreed Order, **Exhibit E**, pp. 4-5.

On May 22, 2015, Plaintiff filed this Complaint alleging that KDMC wrongfully terminated him.  In his Complaint, Plaintiff alleges that, because he gave a ninety-day notice of resignation, he was entitled to be paid for the full ninety-day notice period, from his date of resignation on December 29, 2014, through March 30, 2015.  Plaintiff alleges that KDMC's immediate termination was ineffective and a breach of the

Employment Agreement. He also alleges that KDMC violated the Kentucky Wage and Hour Act by not paying him for the ninety-day notice period.

## ARGUMENT

I. **Plaintiff's Complaint Must Be Dismissed For Lack of Subject Matter Jurisdiction.**

Plaintiff cannot meet the amount in controversy required to establish subject matter jurisdiction with this Court. The law and undisputed facts demonstrate that Plaintiff cannot establish that the amount in controversy exceeds $75,000.00.

   A.   **Legal standard.**

Plaintiff filed his action in this Court based on diversity of citizenship subject matter jurisdiction. To establish diversity jurisdiction, Plaintiff must demonstrate that the amount in controversy exceeds $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332(a). A party seeking to invoke federal court subject matter jurisdiction must establish, by competent evidence, that the amount in controversy is met. *Hertz Corp. v. Friend,* 559 U.S. 77, 96 (2010). The burden of persuasion is on the party asserting jurisdiction. *Id.* Subject matter jurisdiction can be challenged any time prior to final judgment. *Grupo Dataflux v. Atlas Global Group, W.P.,* 541 U.S. 567, 571 (2004)(citing *Copran v. Van Noordern,* 2 Cranch 126, 2.W.Ed. 229 (1804)).

To defeat diversity jurisdiction, "Defendant must establish to a legal certainty that the claim is really for less than the jurisdictional amount*." Charvat v. GVN Michigan, Inc.,* 561 F.3d 623, 629 (6th Cir. 2009)(citing *St. Paul Mercury Indem. Co. v. Red Cab Co*., 303 U.S. 283, 289 (1938)). It is a legal certainty that a claim is less than the jurisdictional amount if applicable law bars the type of damages sought by a plaintiff. *Id*. (citing *Rosen v. Chrysler Corp*., 205 F.3d 918, 921 (6th Cir. 2000)).

### B. Plaintiff's claim under the Kentucky Wage and Hour Act is barred as a matter of law.

Plaintiff seeks liquidated damages, attorney's fees, and costs pursuant to the Kentucky Wage and Hour Act, KRS Chapter 337 (the "Act"). However, the Act does not apply to professional employees. KRS 337.010(2)(a)(2) excludes from the definition of "employee" under the Act "[a]ny individual employed in a bona fide executive, administrative, supervisory, or professional capacity, or in the capacity of outside salesman, or as an outside collector as the terms are defined by administrative regulations of the commissioner." KRS 337.010(2)(a)(2). An individual is employed in a "bona fide professional capacity" if he is (a) compensated on a salary basis at a rate of not less than $455.00 per week; and (2) his primary duty is the performance of work requiring knowledge of a type in a *field of science or learning* customarily acquired by a prolonged course of specialized intellectual instruction. 803 KAR 1:070 Section 4 (1)(a)(b)(emphasis supplied)(copy attached as **Exhibit J,** p. 8). The phrase "field of science or learning" includes the traditional profession of medicine. 803 KAR 1:070 Section 4(2)(c)(**Exhibit J,** p. 9). Therefore, a physician is not considered to be an employee under the Kentucky Act. *See Gonzalez v. Imaging Advantage, LLC,* 2011 WL 6092469 (W.D.Ky. 2011)(a medical doctor is a professional employee exempt from the Act).

It is undisputed that Plaintiff was paid a salary greater than $455.00 per week and that he was employed as a medical doctor. See Employment Agreement, **Exhibit A**. Therefore, the exemption applies to Plaintiff. Plaintiff's Wage and Hour Act claim must be dismissed as a matter of law.

### C. Without his Wage and Hour Act claim, Plaintiff cannot satisfy the amount in controversy requirement.

Absent Plaintiff's KRS Chapter 337 Wage and Hour claim, Plaintiff cannot establish that the amount in controversy exceeds $75,000. Plaintiff is seeking wages and salary, "wRVU" compensation payments, and tuition benefits "for the ninety (90) days after Plaintiff's submittal of his resignation letter." See Plaintiff's Response to the Defendant's First Set of Interrogatories and Requests for Production (redacted), Answer No. 5, attached as **Exhibit K**. Viewing all facts in a light most favorable to Plaintiff, Plaintiff cannot establish that this amount exceeds $75,000.00.

In his Supplemental Answers to KDMC's Interrogatories, Plaintiff claims he is owed $43,150.69 in wages and salary for the ninety day period following his resignation. See Plaintiff's Supplemental Answers to the Defendant's Interrogatories, attached as **Exhibit L**. KDMC is uncertain how Plaintiff calculated this figure. It is undisputed that KDMC agreed to pay Plaintiff $6,730.77 every two weeks, equating to $40,384.62 in salary and wages for a ninety day period. See Plaintiff's Employment Agreement, **Exhibit A**, p. 19. It is also undisputed that KDMC paid Plaintiff $8,412.53 in the ninety days following his notice of resignation. See KDMC'S Payments to Plaintiff, **Exhibit I**. The competent evidence establishes that if successful, Plaintiff could recover no more than $31,972.09 in salary and wages.

Plaintiff also seeks compensation for "wRVU" procedures. A "wRVU" is a measure of value used in the reimbursement formula for physician services. Per the Employment Agreement, Plaintiff was compensated every ninety days for wRVU procedures. In 2014, Plaintiff received $87,973.66 for wRVU procedures, or an average of $21,993.41 every ninety days. Plaintiff can offer no evidence that his

{00519614-15 }

8

wRVU payments for the ninety days for which he is claiming additional payment would have exceeded this average. In other words, even if Plaintiff could establish his entitlement to an additional ninety days of wRVU compensation, that amount would not exceed $21,993.41.

Finally, Plaintiff seeks reimbursement for student loan payments. In the Employment Agreement, KDMC agreed to pay up to $10,000.00 per year for Plaintiff's student loan payments. See Employment Agreement, **Exhibit A**, p. 20. Plaintiff, however, claims he is owed $30,000.00 for student loan payments. Considering that Plaintiff is seeking damages for ninety days, there is no contractual basis for him to claim more than the prorated portion of an annual student loan payment, or $2,500.00.

Based on the foregoing, Plaintiff cannot establish that the total amount he is claiming exceeds $75,000.00. Viewing the facts in a light most favorable to Plaintiff, Plaintiff's maximum amount in controversy is calculated as follows:

```
$31,972.09   (salary and wages)
$21,993.41   (wRVU compensation)
$ 2,500.00   (student loan reimbursement)
$56,465.50   Maximum Amount in Controversy
```

Plaintiff cannot satisfy the amount in controversy requirement. The Court should find that it lacks subject matter jurisdiction and dismiss this action on that basis alone.

**II.     In the Alternative, Plaintiff's Claims are Appropriate for Summary Judgment on the Merits.**

Even if Plaintiff could establish subject matter jurisdiction, the undisputed facts demonstrate that because KDMC had the contractual right to terminate Plaintiff, KDMC did not breach its contract with Plaintiff. Summary judgment is therefore appropriate on Plaintiff's breach of contract claims.

   **A.     Summary judgment standard.**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.*

   **B.     KDMC had a legal right to terminate Plaintiff's employment.**

Contract interpretation is a question of law. *Smith v. Crimson Ridge Development, LLC*, 410 S.W.3d 619, 621 (Ky. App. 2013)(citing *Cantrell Supply, Inc. v.*

{00519614-15}

*Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. App. 2002)). If termination of an employment contract is justified, there is no legal liability for breach of contract. *Brett v. Media General Operations, Inc.*, 326 S.W.3d 452, 458 (Ky. App. 2010). To establish breach of contract, a plaintiff must demonstrate that a contract existed, the defendant breached the contract, and as a result, the plaintiff was damaged. *Barnett v. Mercy Health Partners-Lourdes, Inc.*, 233 S.W.3d 723 (Ky. App. 2006).

Plaintiff cannot establish breach of contract in this case. Pursuant to Section 19 of the Employment Agreement, KDMC had the right to terminate Plaintiff's employment and properly exercised that right. The Employment Agreement gave KDMC a right of immediate termination for numerous causes, including the following:

> **19. Termination.**
>
> . . .
>
> (b) **Immediate Termination by KDMC**. Immediately upon written notice by KDMC to Physician (or Physician's estate) for any of the following reasons:
> . . .
>
> (xi): The good faith determination of KDMC, that continuing the employment of Physician jeopardizes the health, safety or welfare of any patient.

See Employment Agreement, **Exhibit A**, pp. 8-9.

This termination provision was valid and properly exercised. *Brett v. Media General Operations*, 326 S.W.3d 452, 458 (Ky. App. 2010). In *Brett*, the employer terminated plaintiff after it received complaints that plaintiff was sexually harassing his coworkers. As in the present case, the employment contract in *Brett* gave the employee the right to submit a ninety-day notice of resignation and the employer the

{00519614-15 }
11

right to terminate immediately if the employee "failed to behave with due regard to social conventions and public morals and decency." *Id.* The court held that the employer's decision to terminate its employee immediately was a valid exercise of the employer's contractual right and that the employee was not entitled to the ninety-days notice. The court awarded summary judgment against the employee, even though the employee argued a different version of circumstances leading to his termination. *Id.* The court emphasized that that employee could have contracted for a variety of employment rights, including the right to a hearing, certain investigative procedures, or additional notice. *Id.* Because the employee in *Brett* did not bargain for such additional protections, the employer was not required to conduct an investigation or give the employee an opportunity to be heard on the alleged sexual harassment complaints.

Like the employer in *Brett,* KDMC was presented with more than sufficient information to support a good faith determination that Plaintiff's continued employment jeopardized the health, safety, and welfare of KDMC's patients. KDMC received notice that Plaintiff's medical license was being investigated by OIG and the Licensure Board. The Licensure Board subpoenaed and reviewed fourteen of Plaintiff's medical charts. That investigation ultimately resulted in disciplinary action against Plaintiff.

After learning about the investigation, KDMC received disturbing information about Plaintiff's work habits, his interactions with his patients, his prescription practices, and his recordkeeping. Plaintiff notified his patients that he was terminating all prescribed narcotics, without properly tapering his patients or

referring them to pain management.  See Marks Affidavit, **Exhibit C** and Ingles Affidavit, **Exhibit G**. Contrary to KDMC policy and without KDMC's knowledge, Plaintiff went to the Clinic and wrote letters to his patients notifying them that he was terminating their current medication regimen, without consideration for individual medical histories.  Ms. Ingles received calls from pharmacies that Plaintiff was prescribing medications that were no longer manufactured, prescribing medications he was not licensed to prescribe, prescribing contraindicated medications, and prescribing medications without proper insurance authorization. See Ingles Affidavit, **Exhibit G**.

Plaintiff began missing work and had over 2,000 charts open with incomplete documentation.  On one occasion, Plaintiff was scheduled for work but did not show.  See Marks Affidavit, **Exhibit C**, and Ingles Affidavit, **Exhibit G**.  Dr. Fioret and Dr. Welsh attempted to contact Plaintiff to discuss his practices, but Plaintiff did not return their calls.

Even if Plaintiff could present a different version of events leading up to his termination, KDMC has presented sufficient evidence that it had a good faith belief that Plaintiff's continued employment would jeopardize the safety and care of KDMC's patients.  As in *Brett*, Plaintiff could have contracted for additional rights, such as the right to a hearing.  Plaintiff did not do so.  KDMC was not required to conduct a formal investigation or provide Plaintiff with an opportunity to be heard.  KDMC's decision to move forward with immediate termination was an appropriate exercise of its discretion and right under Section 19(b)(xi) of the Employment Agreement.

Plaintiff's only argument appears to be that, since he gave notice of resignation first, he was entitled to ninety days of pay. Plaintiff appears to argue that his preemptive notice of resignation precluded KDMC from deciding to move forward with immediate termination, based on concerns for patient well-being. There was no provision in the Employment Agreement that precluded KDMC from deciding that Plaintiff's conduct presented too much of a risk to the safety and welfare of patients to permit him to continue working and treating patients. KDMC exercised its contractual right, and, therefore, Plaintiff's breach of contract claim must be dismissed as a matter of law.

## CONCLUSION

For the foregoing reasons, KDMC requests that the Court dismiss Plaintiff's Complaint for failure to establish subject matter jurisdiction or, in the alternative, grant KDMC summary judgment on the merits of Plaintiff's claims.

Respectfully submitted,

/s/ Ashley L. Adkins
W. Mitchell Hall, Jr.
Ashley L. Adkins
VANANTWERP ATTORNEYS, LLP
1544 Winchester Avenue, 5th Floor
P.O. Box 1111
Ashland, KY 41105-1111
whall@vanattys.com
aadkins@vanattys.com
Office: (606) 329-2929
Fax: (606) 329-0490
*Counsel for Ashland Hospital Corporation d/b/a King's Daughters Medical Center*

## **CERTIFICATE OF SERVICE**

      I certify that on March 11, 2016, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system.

/s/ Ashley L. Adkins
Ashley L. Adkins