<u>**Filed Electronically**</u>

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT ASHLAND**

| | |
|---|---|
| ANTHONY TODD ARNOTT, M.D., | ) |
| | ) CASE NO.:  0:15-cv-00032-DLB |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ASHLAND HOSPITAL CORPORATION | ) **<u>KDMC'S REPLY IN SUPPORT</u>** |
| D/B/A KING'S DAUGHTERS MEDICAL | ) **<u>OF MOTION TO DISMISS OR,</u>** |
| CENTER, | ) **<u>IN THE ALTERNATIVE, MOTION</u>** |
| | ) **<u>FOR SUMMARY JUDGMENT</u>** |
| Defendant. | ) |
| | ) |

Defendant, Ashland Hospital Corporation, d/b/a King's Daughters Medical Center ("KDMC"), submits this Reply in support of its Motion to Dismiss or, in the Alternative, Motion for Summary Judgment:

**<u>INTRODUCTION</u>**

Plaintiff cannot meet the $75,000.00 minimum for this Court's subject matter jurisdiction.  To bolster his argument on the amount in controversy, Plaintiff continues to rely on a statutory claim that is barred as a matter of law and on monetary claims not supported by the record.  It is a legal certainty that the amount in controversy does not exceed $75,000.00, and the Complaint must therefore be dismissed for lack of subject matter jurisdiction.

Even if Plaintiff could satisfy the amount in controversy requirement, this case is appropriate for summary judgment on the merits. Pursuant to the plain language of the Employment Agreement, KDMC exercised its contractual right to terminate

{00538748-14 }

1

Plaintiff's employment for cause. The undisputed facts establish that the information available to KDMC supported its good faith determination to terminate Plaintiff's employment. Plaintiff has not identified any evidence that creates any genuine issue of material fact on Plaintiff's breach of contract claim.

**I.**     <u>**KDMC Has Established That Plaintiff's Claim Does Not Meet the Jurisdictional Minimum Amount.**</u>

In its Motion, KDMC demonstrated that, even if Plaintiff could establish that he was entitled to compensation through March 30, 2015, the maximum amount recoverable would be less than $75,000.00. Plaintiff's Response does not create any question of fact on this undisputed fact.

   **A.**     **Plaintiff's Wage and Hour Act Claim Must be Dismissed as a Matter of Law.**

In his Response, Plaintiff continues to assert that, pursuant to the Kentucky Wage and Hour Act, he is an "employee" entitled to liquidated damages and attorney fees. Plaintiff, however, has failed to address the exemption in the Act for medical doctors. KRS 337.010(2)(a)(2); 803 KAR 1:070 Section 4 (1)(a)(b); and 803 KAR 1:070 Section 4(2)(c). Kentucky law is clear that professional employees, including medical doctors, are not considered employees under the Act and cannot recover liquidated damages or attorney fees from their employers. *See Gonzalez v. Imaging Advantage, LLC,* 2011 WL 6092469 (W.D. Ky. 2011). Plaintiff does not even mention the exemption or the case law in his Response. As a matter of law, Plaintiff cannot pursue his Wage and Hour Act claim, and any claim for liquidated damages or attorney fees therefore cannot be considered in measuring the amount in controversy in this action.

**B.** **Plaintiff's Contractual Claim Does Not Meet the Jurisdictional Minimum.**

In his response, Plaintiff argues that his damages claim exceeds the jurisdictional minimum. Plaintiff first claims that his salary and wages claim for ninety days, from December 29, 2014 until March 30, 2015, is $43,150.69. Plaintiff claims this represents ninety days of his biweekly salary of $6,730.77. This argument fails to account for the fact that Plaintiff was paid all compensation through January 7, 2015, the date of his termination, as reflected in the payroll history record submitted as Exhibit I to KDMC's Motion to Dismiss. As further evidence that Plaintiff was paid for the period between the date of his resignation notice and his date of termination, KDMC is attaching the Affidavit of Kristin Price, KDMC's Director of Internal Audit, as **Exhibit 1** to this Reply. As confirmed in Ms. Price's Affidavit, KDMC made payments to Plaintiff in 2015 for services performed during the ninety-day period, including salary and wages totaling $4,879.54. Therefore, Plaintiff's $43,150.69 claim is overstated by $4,879.54 that was actually paid to Plaintiff by KDMC. Plaintiff's best-case scenario for recovery of salary and wages claimed from December 29, 2014 through March 30, 3015 is $38,271.15.

Based on quarterly averages from 2014, Plaintiff next claims he is owed $21,993.41 in wRVU bonus payments. However, Ms. Price's affidavit establishes that the payments made to Plaintiff in 2015 also included $3,851.00 in wRVU bonus payments for wRVUs posted in January and February. *See* **Exhibit 1**. Therefore, Plaintiff's $21,993.41 is also overstated and should be reduced by this payment actually received for 2015 wRVUs, leaving $18,142.41 for Plaintiff's wRVU claim.

{00538748-14 }

3

Plaintiff next claims that his student loan reimbursement claim is $20,000.00. There is no contractual basis for this claim.  Under the Employment Agreement, KDMC agreed "to pay up to Ten Thousand Dollars ($10,000.00) per year, over a three (3) year period" toward Plaintiff's student loans.  *See* Exhibit A to KDMC's Motion to Dismiss, p. 20, paragraph 6.  This language does not support any claim that Plaintiff is entitled to $20,000.00 for the ninety-day period that is the subject of his Complaint. Plaintiff cannot claim more than the prorated portion of his annual student loan payment.  At best, Plaintiff's student loan reimbursement claim must be limited to $2,500.00.

Without providing any evidence, by way of affidavit or otherwise, regarding supervisory responsibilities, Plaintiff contends that he is entitled to a "supervisory fee" of $1,500.00 ($500.00 per month).  He also asserts that he is owed $6,472.60 in "non-monetary benefits," based upon multiplying his annual salary by an arbitrary fifteen percent.  These items of damages were not disclosed in response to KDMC's damages interrogatory to Plaintiff.  *See* Plaintiff's Supplemental Responses to KDMC's Interrogatories, Interrogatory No. 7, attached as **Exhibit 2** to this Reply.  Plaintiff has also identified no evidence to support applying an arbitrary fifteen percent multiplier to his annual salary to arrive at "non-monetary benefits."

Nevertheless, for purposes of KDMC's Motion and to give Plaintiff the benefit of the doubt, KDMC will include these two items in Plaintiff's damages claim. As illustrated below, even including the amounts claimed for supervisory fees and non-monetary benefits, Plaintiff's claim does not exceed $75,000.00:

{00538748-14 }

$38,271.15   (wages and salary)
$18,142.41   (wRVU payments)
$ 6,472.60   (non-monetary benefits)
$ 2,500.00   (student loan payment)
$ 1,500.00   (supervisory fees)
**$66,886.16   Total Amount in Controversy**

Therefore, using Plaintiff's own numbers, with deductions that Plaintiff cannot dispute, and including Plaintiff's arbitrary benefits claim for $6,472.60, the amount in controversy does not exceed the $75,000.00 jurisdictional requirement.  This Court lacks subject matter jurisdiction, and the Complaint must be dismissed.

II.   **There is No Issue of Material Fact About KDMC's Contractual Right to Terminate Plaintiff.**

In his Response, Plaintiff argues that KDMC's decision to terminate him was a "cover up" or act of "retaliation."  Plaintiff's arguments that he was over-scheduled or that he inherited patients who were on a narcotics regimen are immaterial.  Pursuant to the plain language of the Employment Agreement, KDMC had the right to terminate Plaintiff:

> **19.   Termination.**
> . . .
> (b)   **Immediate   Termination   by   KDMC**. Immediately upon written notice by KDMC to Physician (or Physician's estate) for any of the following reasons:
> . . .
>
> (xi):   The good faith determination of KDMC, that continuing the employment of Physician jeopardizes the health, safety or welfare of any patient.

{00538748-14 }

This termination provision was valid and properly exercised. *See Brett v. Media General Operations*, 326 S.W.3d 452, 458 (Ky. App. 2010). Plaintiff's contention that he was entitled to ninety days notice is misplaced. In *Brett*, the Court held that where an employment contract contained both a ninety-day notice provision and an immediate termination provision, the employer was not required to provide the employee with ninety days notice when good cause existed, in the employer's discretion, to terminate the plaintiff's employment. *Id.* at 457-58.

Plaintiff does not address *Brett* or cite to any case law in support of his argument that KDMC did not have the right to terminate him. Rather, he argues that KDMC's decision was a "cover up" or an act of "retaliation." He argues that he had complained to KDMC about his patient loads and about accepting pain management patients from previous physicians. Notably, Plaintiff has not cited to any evidence in the record or submitted an affidavit that disputes the licensure board investigation or that creates any issue of fact relating to KDMC's decision to terminate Plaintiff's employment.

The undisputed facts in the record demonstrate that KDMC did have sufficient grounds to make a good faith determination to terminate Plaintiff's employment. KDMC learned that Plaintiff was under investigation by the Office of Inspector General and Kentucky Board of Medical Licensure ("KBML"). The KBML found that Plaintiff "departed from or failed to conform to acceptable and prevailing medical practices by treating patients (his staff) without documentation of a history or physical exam; failing to respond appropriately to problem information evident on patients' KASPER reports and urine drug screens; and failing to examine KASPER

{00538748-14 }

6

reports for early refills, multiple providers and multiple pharmacies." *See* Agreed Order, attached as Exhibit C to KDMC's Motion to Dismiss. The Agreed Order went on to state:

> …

> [I]t appeared he 'inherited' patients from his partners on controlled substances. Though I sympathize with the extenuating circumstances of the practice where he was employed, I feel he is responsible for the care he delivered there.

> Not all the charts reviewed were 'inherited patients.' Some of the charts reviewed showed Dr. Arnott initiated and increased the dosages of controlled substances, and played a role in the poly-pharmacy.

> It appears that the patients were terminated after the inquiry about Dr. Arnott's prescribing habits was made.

> …

> I am still concerned about some of his goals of care, specifically in insulin-dependent diabetes, Vitamin D replacement and the use of phentermine for abdominal obesity in persons with normal BMI.

> …

Plaintiff himself agreed that he engaged in conduct that violated KRS 311.595 (5). *See* Agreed Order, attached as Exhibit C to KDMC's Motion to Dismiss. Plaintiff was sanctioned, and his Kentucky license placed on probation for five years. KDMC submitted affidavits of Plaintiff's supervisors, Sara Marks and Valerie Ingle, detailing the patient concerns raised by the KBML investigation and, more importantly, by Plaintiff's behavior with his patients and charts at and around the time that Plaintiff gave his notice of resignation. Plaintiff's behavior created real concerns with Ms. Marks and Ms. Ingle about patient care and safety.

{00538748-14 }

7

Plaintiff has not cited to any evidence in the record that challenges the facts and concerns described in the Marks and Ingle affidavits.  He has not identified any evidence that creates any genuine issue of material fact regarding KDMC's right to invoke the immediate termination provision of the Employment Agreement.  Because there is no genuine issue of fact, summary judgment must be entered on Plaintiff's contractual claims.

## CONCLUSION

For the foregoing reasons, KDMC requests that the Court dismiss Plaintiff's Complaint for failure to establish subject matter jurisdiction or, in the alternative, grant KDMC summary judgment on the merits of Plaintiff's claims.

Respectfully submitted,

/s/ Ashley L. Adkins
W. Mitchell Hall, Jr.
Ashley L. Adkins
VANANTWERP ATTORNEYS, LLP
1544 Winchester Avenue, 5th Floor
P.O. Box 1111
Ashland, KY 41105-1111
whall@vanattys.com
aadkins@vanattys.com
Office: (606) 329-2929
Fax: (606) 329-0490
*Counsel for Ashland Hospital Corporation*
*d/b/a King's Daughters Medical Center*

## CERTIFICATE OF SERVICE

I certify that on May 13, 2016, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system.

/s/ Ashley L. Adkins
*Counsel for Ashland Hospital Corporation*
*d/b/a King's Daughters Medical Center*

{00538748-14 }

8