UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

CIVIL ACTION NO. 15-32-DLB-EBA

ANTHONY ARNOTT                                                                           PLAINTIFF

v.                       **MEMORANDUM OPINION AND ORDER**

ASHLAND HOSPITAL CORPORATION                                          DEFENDANT

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on Defendant Ashland Hospital Corporation's Motion to Dismiss. (Doc. # 26). Defendant Ashland Hospital Corporation, d/b/a King's Daughters Medical Center ("KDMC") moves to dismiss Plaintiff Anthony Arnott's Complaint for lack of subject matter jurisdiction. In the alternative, KDMC moves for summary judgment on the merits of Arnott's claims. Arnott having filed his Response (Doc. # 38) and KDMC having filed a Reply in Support (Doc. # 39), this matter is ripe for the Court's review. Having reviewed the parties' briefing, and the Court being otherwise sufficiently advised, KDMC's Motion to Dismiss will be **granted** for the reasons stated herein.

I.      FACTUAL AND PROCEDURAL BACKGROUND

On October 7, 2014, Plaintiff Anthony Todd Arnott, M.D. entered into an Employment Agreement ("the Agreement") with Defendant King's Daughters Medical Center. (Doc. # 1 at ¶ 7). The Agreement was set for a term of one year, beginning October 7, 2014 and ending on October 6, 2015. *Id.* at ¶ 8. Either party could terminate the Agreement "at anytime without cause on ninety (90) days prior written notice to the

1

other Party." *Id* at ¶ 9. The Agreement also provided for immediate termination "upon written notice by KDMC to Physician . . . for any of the following reasons." (Doc. # 1 at Ex. 1). The list of reasons included, in relevant part, "the good faith determination of KDMC, that continuing the employment of Physician jeopardizes the health, safety or welfare of any patient." *Id.*

On or around June 16, 2014, the Office of the Inspector General ("OIG") began investigating Dr. Arnott. (Doc. # 26 at Ex. E). The OIG recommended that the Kentucky Board of Medical Licensure conduct further investigation. *Id.* KDMC claims that it received notice of the investigation for the first time on December 11, 2014. (Doc. # 26-1, p. 3). On December 29, 2014, Arnott submitted his ninety-day notice of resignation to KDMC. (Doc. # 1 at ¶ 10). Arnott expected to continue working for KDMC throughout the ninety-day period ending March 30, 2015. *Id.* On January 7, 2015, KDMC terminated Arnott, effective immediately, pursuant to the immediate termination provision in the Agreement. *Id.* at ¶ 11.

Arnott filed a complaint in federal court, asserting claims for breach of contract, Wage and Hour Act violations under KRS Chapter 337, and breach of good faith and fair dealing. (Doc. # 1). Arnott claims that he was terminated without justification, and that KDMC owes him all payments due under the Agreement through March 30, 2015. *Id.* KDMC has filed a motion to dismiss for lack of subject matter jurisdiction, or in the alternative, for summary judgment. (Doc. # 26).

**II.    ANALYSIS**

    **A.    Standard of Review**

"In a federal diversity action, the amount alleged in the complaint will suffice unless it appears to a legal certainty that the plaintiff in good faith cannot claim the jurisdictional amount." *Klepper v. First American Bank*, 916 F.2d 337, 340 (6th Cir. 1990) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938)). A clear argument that the plaintiff will lose on the merits is not enough to preclude jurisdiction if the claim is made in good faith. *Kovacs v. Chelsey*, 406 F.3d 393, 395 (6th Cir. 2005). Rather, the court must be satisfied that the plaintiff "never was entitled to recover that amount." *St. Paul Mercury Indem. Co.*, 303. U.S. at 290. To determine whether the amount in controversy has been met, the district court must examine whether (1) the plaintiff has set forth a legal basis for his claim, and (2) there is "some chance" he could recover the claimed amount of damages. *Kovacs*, 406 F.3d at 395.

**B.   KRS Chapter 337**

A complaint should be dismissed if "from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount." *St. Paul Mercury Indem. Co.*, 303 U.S. at 288-90. It appears to a legal certainty that a claim for damages is less than the jurisdictional amount where the applicable state law bars the type of damages sought. *See Charvart v. GVN Michigan, Inc.*, 561 F.3d 623, 628 (6th Cir. 2009); *Wood v. Stark Tri-County Bldg. Trades Council*, 473 F.2d 272, 274 (6th Cir. 1973).

Kentucky's Wage and Hour Act ("the Act"), KRS Chapter 337, allows plaintiffs to seek liquidated damages plus costs and attorney's fees from employers who violate the

Act. *See* KRS 337.385. Certain employees, including individuals employed in a "bona fide professional capacity," are excluded from coverage under the Act. KRS 337.010(a)(2). Regulations corresponding to the Act define "professional" to include "learned professionals" in the traditional field of medicine. 803 KAR 1:070 Section 4(2)(c). The regulations elaborate further, explicitly stating that "the exemption shall apply to physicians." KAR 1:070 Section 4(5)(b). It is clear from the terms of the statute and regulations that physicians are not covered by the Act. Thus, the Court finds that Arnott does not have a legal basis for his claim for damages under Kentucky's Wage and Hour Act.

    **C.    Breach of Contract**

Because there is no legal basis for Arnott's claim to damages under KRS 337, the amount in controversy will include only the damages resulting from Arnott's breach of contract claim. It is not disputed that Arnott has a legal basis for damages under his breach of contract claim. Accordingly, the Court will move to the second prong of the amount in controversy analysis: whether there is "some chance" that Arnott could recover the amount claimed. *See Kovacs*, 406 F.3d at 395.

Arnott alleges damages in excess of $75,000 solely from breach of contract. (Doc. # 26 at Ex. L). Specifically, he seeks damages for compensation due under the Agreement including salary, bonuses, student loan payments, and non-monetary benefits. *Id.* Arnott provides an itemized list detailing the requested damages as follows:

| | |
|---|---|
| Wages and Salary: | $43,150.69 |
| Compensation for wRVU procedures: | $21,993.41 |
| Student Loan Repayments: | $20,000.00 |
| Supervisory Fee: | $1,500.00 |
| Non-monetary benefits: | $6,472.60 |
| | Total: $93,116.70 |

4

(Doc. # 38, p. 8).

KDMC offers its own calculation of damages. It claims that it paid Arnott for the period between December 29, 2014 (the day Arnott gave his ninety-day notice) and January 7, 2015 (the day Arnott was terminated). (Doc. # 26-1, p. 8). Therefore, according to KDMC, Arnott cannot seek damages for the full ninety-day period. *Id.* Instead, he must reduce the ninety-day total by the amount of compensation he received for work after December 29, 2014. *Id.* KDMC's adjusted calculation of damages is itemized as follows:

| | |
|---|---|
| Wages and Salary: | $38,271.15 |
| Compensation for wRVU procedures: | $18,142.41 |
| Student Loan Repayments: | $2,500.00 |
| Supervisory Fee: | $1,500.00 |
| Non-monetary benefits: | $6,472.60 |
| | Total: $66,886.16 |

(Doc. # 39, p. 5).

KDMC has provided evidence of payments it made to Arnott after December 29, 2014. (Doc. # 27, Ex. I). All of the payments KDMC issued to Arnott were made prior to Arnott filing his complaint. *Id.* Arnott does not directly refute the evidence, and acknowledges that he received his last paycheck on January 17, 2015 for payment up to January 7, 2015. (Doc. 27, Ex. F). Still, he claims he is entitled to damages for the entire ninety-day period following his notice of resignation. (Doc. # 38, p. 4). Having reviewed the evidence, the Court finds to a legal certainty that Arnott was compensated for the period between December 29, 2014 and January 7, 2015. The damages Arnott seeks must be adjusted accordingly, as he could not have made a good faith claim to damages for the entire ninety-day period following his notice of resignation.

Additionally, the amount of damages Arnott seeks for student loan repayments must be adjusted. Arnott originally claimed that KDMC owed him $30,000 in student loan assistance payments. (Doc. # 26 at Ex. L). Later, Arnott reduced the amount to $20,000, claiming that KDMC owed him $10,000 per year for 2014 and 2015. (Doc. # 38, p. 4). KDMC claims that it cannot owe Arnott more than the prorated amount due for 2015, or $2,500. (Doc. # 26-1, p. 8). The record supports the figure offered by KDMC. The Agreement provides for KDMC to make payments toward Arnott's student loans "up to Ten Thousand Dollars ($10,000.00) per year." (Doc. # 1 at Ex.1). KDMC has provided proof of payment for the period from October 2014 to December 2014. (Doc. # 42). Because the Agreement did not become effective until October 2014, KDMC cannot owe Arnott any additional payments for the year 2014 under the contract at issue. Further, the Agreement provides that student loan payments will be prorated by month. (Doc. # 1 at Ex. 1). If Arnott were to be awarded damages for the full ninety days following his notice of resignation, he could recover only one quarter of the payments promised for 2015, or $2,500.

After making the appropriate adjustments, the Court finds the amount in controversy as follows:

Wages and Salary:                              $39,794.53[1]
Compensation for wRVU procedures:   $21,993.41[2]

---

[1] To arrive at this number, the Court assumed that Plaintiff's ninety-day calculation was correct. That total was divided by ninety to arrive at Plaintiff's per-day salary, then that figure was multiplied by eighty-three, the number of days remaining under the Agreement for which Arnott has not been compensated.

[2] The Court continues to use the sum claimed by Plaintiff, rather than reducing it to reflect amounts already paid. The Court made adjustments only to those figures that were clearly – to a legal certainty – less than Arnott claimed.

6

| | |
|---|---|
| Student Loan Repayments: | $2,500.00 |
| Supervisory Fee: | $1,500.00 |
| Non-Monetary Benefits: | $6,472.60 |
| | Total: $72,260.54 |

It is apparent "to a legal certainty" that the sum of damages falls short of the $75,000 jurisdictional minimum. Consequently, this Court does not have subject matter jurisdiction under 28 U.S.C. § 1332 and Arnott's complaint must be dismissed.

### III. CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

1. Defendant Ashland Hospital Corporation's Motion to Dismiss (Doc. # 26) is hereby **GRANTED**; and

2. This case is **STRICKEN** from the Court's active docket.

This 1st day of November, 2016.



Signed By:
<u>David L. Bunning</u> *DB*
United States District Judge

K:\DATA\Opinions\Ashland\15-32 MOO granting MTD.wpd